Opinion issued March 3, 2016



In The

# Court of Appeals

For The

# First District of Texas

————————————————

## NO. 01-14-00186-CV

————————————————

**LLOYD GILLIAM AND CAROLYN GILLIAM, MARTHA HOLLAN, CHARLIE BEAIRD AND KAREN BEAIRD, LILA ROSE ANDERSON, MICHAEL SANDERS AND RAQUEL SANDERS, RICHARD LON AND PRISCILLA LON, DONNA H. JOHNSON, JEROME A. BRADKE AND NANCY BRADKE, MR. AND MRS. E.E. EWING, JR., RICKY LEGGETT, KENNY BEAR AND DANA BEAR, REGINA BRUEGGEMAN AND STEVEN BRUEGGEMAN, MARLO PORRAS, DAVID CONNELL, JR., JASON BRONAS AND BARBARA MCGUIRE, Appellants**

**V.**

**SANTA FE INDEPENDENT SCHOOL DISTRICT, Appellee**

—————————————————————————————————————————————

**On Appeal from the 405th District Court**
**Galveston County, Texas**

**MEMORANDUM OPINION**

For the second time in this case,[1] we consider whether a public school district has governmental immunity for various claims brought by residents of a subdivision in which the school district built a student agricultural center. We affirm.

**BACKGROUND**

The background facts, as set forth in this Court's previous opinion, are as follows:

> Santa Fe School District ["the District"] is a public school district located in Santa Fe, Texas. In 2008, the District began planning to construct a state-of-the-art agricultural center ["the Center"] to be used by its students. Certain aspects of the planned center were included within a November 2008 bond proposal approved by voters, which provided for "the construction and acquisition of certain equipment for a new agricultural center." However, rather than use bond money to purchase property for the Center near the local high school, the District decided to build on property it already owned in the F.H. Thamn's Second Subdivision ["the subdivision"], thus eliminating the cost of purchasing other land.
>
> Appellants, residents of the subdivision, filed suit against the District seeking to enjoin the construction of the Center in the subdivision. Specifically, appellants alleged that the District's actions breached the subdivision's restrictive covenants, constituted a nuisance, and were a taking in violation of the Private Real Property Rights Preservation Act. *See* TEX. GOV'T CODE ANN. § 2007.004(a) (West 2008). Appellants also filed claims that the District had violated the Texas Open Meetings

---

[1] *See Gilliam v. Santa Fe Indep. Sch. Dist.*, No. 01-10-00351-CV, 2011 WL 1938476 (Tex. App.—Houston [1st Dist.] May 12, 2001, no pet.) (mem. op.) (hereafter, "*Gilliam I*").

2

Act. *See* TEX. GOV'T CODE ANN. § 551.001. The District filed a plea to the jurisdiction, which the trial court granted.

*Gilliam I*, 2011 WL 1938476, at \*1.

On May 12, 2011, this Court held in the first appeal that (1) the State did not waive immunity for appellants' breach of contract claims arising out of local deed restriction; therefore, that claim was properly dismissed, *id*. at \*3; (2) appellants did allege both statutory and constitutional takings claims for which immunity is not waived, but those claims were not ripe because, at that time, the Center had not been built, *id*. at \*5–6; and (3) appellants' nuisance claims were similarly not ripe. *Id*. at \*7. As such, the Court concluded that the breach of contract claim, takings claims, and nuisance claims were properly dismissed. *Id*. However, the Court held appellants had stated a claim alleging a violation of the Texas Open Meetings Act ["TOMA"], a claim for which immunity is waived, and reversed and remanded appellants' TOMA claim for further proceedings. *Id*.

On remand, appellants filed a Second Amended Petition, which set forth the remanded TOMA claim and added new constitutional and statutory takings and nuisance claims, which they asserted were no longer unripe because the Center had since been built. The District filed a Plea to the Jurisdiction and Partial Motion for Summary Judgment, alleging that (1) Texas Supreme Court authority issued after this Court's opinion permits a court to review the merits of a claim that the plaintiff alleges as a waiver of governmental immunity and to dismiss the claim if the plaintiff

3

cannot prove an element of the claim;[2] and (2) the trial court now lacks subject matter jurisdiction over the TOMA claims because the issue is moot. The trial court granted the District's Plea to the Jurisdiction and dismissed appellants' TOMA claims on October 30, 2012.

On March 21, 2013, appellants' filed their Fifth Amended Petition, again asserting constitutional and statutory takings and nuisance claims. They also asserted for the first time that the District violated Section 11.086 of the Texas Water Code. *See* TEX. WATER CODE ANN. § 11.086 (West 2008). The District responded by filing a combined "First Amended Plea to the Jurisdiction, and Traditional and No-Evidence Motions for Summary Judgment." In the Plea to the Jurisdiction section of the motion, the District alleged as follows:

(1) Plaintiffs' nuisance, nuisance per se, and Texas Water Code claims must be dismissed because SFISD's immunity from suit has not been waived for those claims;

(2) Plaintiffs' constitutional takings claims must be dismissed because the Plaintiffs' judicial admission affirmatively negates this Court's subject matter jurisdiction to hear those claims;

---

[2] In this Court's opinion, we declined to determine whether there had been a TOMA violation because the District's argument went to the merits of the claim, not to whether appellants' petition alleged a claim for which immunity was waived. *Gilliam I*, 2011 WL 1938476, at *7. The District argued, both in the trial court and in this appeal, that this reasoning has been abrogated by *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636–37 (Tex. 2012) (holding that elements of prima facia case in statutory cause of action against government can be considered jurisdictional facts and properly addressed by plea to jurisdiction).

4

(3) SFISD is immune from Plaintiffs' PRPRPA claims because those claims were filed after the mandatory and jurisdictional 180-day filing deadline;

(4) Plaintiffs do not have standing to bring their statutory takings claims pursuant to the PRPRPA because no actual relief is available to the Plaintiffs through that Act to redress their alleged damages; and

(5) SFISD remains immune from Plaintiffs' deed restruction and TOMA claims that still appear in their live petition even though those claims were previously dismissed.

In the Traditional Motion for Summary Judgment section of the motion, the District asserted that:

(1) Plaintiffs' takings and nuisance claims are barred by the Texas Right to Farm Act; and

(2) Plaintiffs' claims that are premised on or tied to purported violations of deed restrictions are barred by the doctrine of law of the case.

Finally, in the No Evidence Motion for Summary Judgment section of the motion, the District asserted that there was no evidence that SFISD:

(1) acted intentionally in any manner that would support a constitutional takings claim; or that

(2) plaintiffs' property values have been diminished by the existence of and operation of the Ag Center.

On February 6, 2014, the trial court granted appellants' First Amended Plea to the Jurisdiction and Traditional and No-Evidence Motions for Summary Judgment and dismissed all of plaintiffs' claims against the District.

This second appeal followed, challenging the trial court's rulings.

5

## STANDARD OF REVIEW

Governmental immunity consists of immunity from liability and immunity from suit. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Governmental immunity deprives the trial court of subject-matter jurisdiction in cases where instrumentalities of the state have been sued, absent waiver of immunity by the state. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). A plea to the jurisdiction is a proper instrument to raise the issue of governmental immunity. *Id.* at 225–26. Whether a court has subject-matter jurisdiction is a question of law, and we review the trial court's grant of a plea to the jurisdiction de novo. *Id.* at 226. When reviewing a grant or denial of a plea to the jurisdiction, we consider the plaintiff's pleadings, construed in favor of the plaintiff, and any evidence relevant to jurisdiction without weighing the merits of the claim. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court is required to consider relevant evidence submitted by the parties. *Miranda*, 133 S.W.3d at 226–27. If the evidence creates a fact issue regarding jurisdiction, the trial court does not rule on the plea, but instead submits the issue to the factfinder in a trial on the merits. *Id.* at 227–28.

The procedure for a plea to the jurisdiction when evidence has been submitted to the trial court mirrors that of a traditional motion for summary judgment. *Id.* at

6

228; *see also* TEX. R. CIV. P. 166a(c). Thus, the burden is on the movant to present evidence establishing that the trial court lacks jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228. Thereafter, the burden shifts to the plaintiff to demonstrate that a disputed issue of material fact exists regarding the jurisdictional issue. *Id.* "[E]ven then, the plaintiff's burden of proof with respect to those jurisdictional facts must not 'involve a significant inquiry into the substance of the claims.'" *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d, 629, 637–38 (Tex. 2012).

## GOVERNMENTAL IMMUNITY

In four issues on appeal, appellants contend that the trial court erred in granting the District's pleas to the jurisdiction.

### I. Open Meetings Claim

In issue one, appellants contend the trial court erred by dismissing their claims that the District violated the Texas Open Meetings Act ["TOMA"]. *See* TEX. GOV'T CODE ANN. § 551.001-551.146 (West 2004 & Supp. 2010). TOMA expressly waives sovereign immunity for violations of the Act. *See* TEX. GOV'T CODE ANN. § 551.142. TOMA requires that all meetings of governmental bodies be open to the public unless otherwise authorized by law. *Id.* at § 551.002. The purpose of TOMA is "to safeguard the public's interest in knowing the workings of its governmental

bodies." *Hays County v. Water Planning P'ship*, 69 S.W.3d 253, 257–58 (Tex. App.—Austin 2002, no pet.).

Specifically, appellants argue that our previous opinion created law of the case that "foreclosed the district court from dismissing the open meetings claim on jurisdictional grounds."

The law-of-the-case doctrine is defined as that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages. *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986); *Trevino v. Turcotte*, 564 S.W.2d 682, 685 (Tex. 1978). By narrowing the issues in successive stages of the litigation, the law-of-the-case doctrine is intended to achieve uniformity of decision as well as judicial economy and efficiency. *Hudson*, 711 S.W.2d at 630; *Dessommes v. Dessommes*, 543 S.W.2d 165, 169 (Tex. Civ. App.—Texarkana 1976, writ ref'd n.r.e.). The doctrine is based on public policy and is aimed at putting an end to litigation. *Hudson*, 711 S.W.2d at 630; see *Barrows v. Ezer*, 624 S.W.2d 613, 617 (Tex. App.—Houston [14th Dist.] 1981, no writ).

The law-of-the-case doctrine applies only to questions of law and does not apply to questions of fact. *Hudson*, 711 S.W.2d at 630. Further, the doctrine does not necessarily apply when either the issues or the facts presented in successive appeals are not substantially the same as those involved on the first trial. *Id.;* *Barrows*, 624 S.W.2d at 617. Thus, when in the second trial or proceeding, one or

both of the parties amend their pleadings, it may be that the issues or facts have sufficiently changed so that the law of the case no longer applies. *Hudson*, 711 S.W.2d at 630.

Here, the District's plea to the jurisdiction on the TOMA issues claimed, for the first time, that "Plaintiffs' TOMA claim is moot because the source of the controversy—the construction of the Center—no longer exists since the Center has been constructed and is operational." The District argued that actions taken in violation of TOMA are voidable, not void, *see* TEX. GOV'T CODE ANN. § 551.141 (West 2008), and that "no relief [could] be granted with respect to any purported improper action of the board related to the construction of the Center because the multi-million dollar Center has been built at the location selected by SFISD Administrators; the Center is fully operational; and all contracts related to the construction of the Center have been fully performed." Mootness is an issue of subject-matter jurisdiction. *Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon*, 195 S.W.3d 98, 100–01 (Tex. 2006). Subject-matter jurisdiction cannot be waived, and can be raised at any time. *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Loutzenhiser*, 140 S.W.3d 351, 358 (Tex. 2004).

Because the District raised a new jurisdictional issue that this Court did not consider in *Gilliam I*, the trial court was not constrained by the law-of-the-case doctrine and properly considered the District's Plea to the Jurisdiction.

9

Appellant's also appear to argue that the District filed, and the trial court ruled on, the District's Plea to the Jurisdiction relating to the TOMA claims before the discovery deadline set by the docket control order had passed. When a party contends that it has not had an adequate opportunity for discovery before a summary-judgment hearing, the party must file either an affidavit explaining the need for further discovery or a verified motion for continuance. *See Tenneco, Inc. v. Enter. Prods.*, Co., 925 S.W.2d 640, 647 (Tex. 1996); *West v. SMG*, 318 S.W.3d 430, 443 (Tex. App.—Houston [1st Dist.] 2010, no pet.). The record does not reflect that appellants took either of these steps; thus, they failed to preserve error. *See Tenneco, Inc.*, 925 S.W.2d at 647; *Doe v. Roman Catholic Archdiocese of Galveston–Houston ex rel. Dinardo*, 362 S.W.3d 803, 811–12 (Tex. App.—Houston [14th Dist.] 2012, no pet); *Triad Home Renovators, Inc. v. Dickey*, 15 S.W.3d 142, 145 (Tex. App.—Houston [14th Dist.] 2000, no pet).[3] Further, on appeal, appellants do not argue how the time they were actually given was inadequate or what they would have discovered if given more time.

We overrule appellants' first issue.

## II.   Law of the Case as to Remaining Claims

---

[3]    Additionally, the trial court's ruling on the TOMA claim was an interlocutory dismissal granted on October 30, 2012. The final judgment granting the District's Plea to the Jurisdiction and Motion for Traditional and No-Evidence Summary judgment on the remaining claims was not signed until February 6, 2014. In the interim, discovery was completed.

In their second issue on appeal, appellants contend "the district court erred in its interpretation of this Court's prior order; the law of the case governs and the court had jurisdiction to consider the subject claims." Although not clear from appellants' brief, it seems that appellants' are contending that the trial court refused to consider their repleaded constitutional and statutory takings claims, which were in their second [and subsequent] amended petitions. To understand appellants' complaint, it is necessary to review the language of the trial court's order, which provides:

> Pending before the Court is the Defendant's First Amended Plea to the Jurisdiction, Traditional and No-Evidence Motions for Summary Judgment. The Court, having considered the Motion, Plaintiffs' responses, Defendant's replies, the evidence, arguments of counsel, the applicable law, and the record is of the opinion that the Court's previous order granting Defendant's Plea to the Jurisdiction which was affirmed in part by the Court of Appeals *disposed of all of Plaintiffs' claims set forth in their First Amended Petition* (including nuisance, nuisance per se, violation of city ordinances, violation of restrictive covenants, and all claims related to or involving a takings claim) other than Plaintiffs' claims that Defendant violated the Texas Open Meetings Act.

> Thereafter, the Court granted Defendant's Plea to the Jurisdiction and Partial Motion for Summary Judgment as to Plaintiff's Texas Open Meetings Acts claims. Defendant claims that Plaintiffs asserted a new claim of violation of the Texas Water Code. The Texas Water Code claim, however, was part of Plaintiff's nuisance claim which has already been dismissed for lack of subject matter jurisdiction. Alternatively, even if the Texas Water Code claim has not already been dismissed, the Court find that Defendant's First Amended Plea to the Jurisdiction, Traditional and No-Evidence Motions for Summary Judgment has merit as to the Texas Water Code claim as well.

> Therefore, the Court GRANTS Defendant's First Amended Plea to the Jurisdiction, Traditional and No-Evidence Motions for Summary

11

Judgment. All of Plaintiffs' claims against Defendant are hereby dismissed. This is a final, appealable order. (Emphasis added).

Appellants construe the first paragraph of the order above as a refusal to consider appellants' amended petitions, which they assert misconstrues this Court's previous opinion and violates the law-of-the-case doctrine. We disagree with their interpretation of the trial court's order. In the first paragraph above, the trial court specifies that the claims in appellants' *First Amended Petition* have been dismissed. The second paragraph disposes of the remanded TOMA claim. The third paragraph grants the District's First Amended Plea to the Jurisdiction, which sought dismissal of all remaining claims in appellants' amended petitions, including the new takings claims, which were based on the since-completed Center. By granting the District's First Amended Plea to the Jurisdiction, which sought dismissal of the claims in appellants' amended petitions, the trial court necessarily considered the claims in appellants' amended petitions.

Accordingly, we overrule appellants' issue two.

### III. Takings Claims

In issue three, appellants contend the trial court erred in dismissing their takings claims. Appellants claimed both a statutory taking under section 2007.021 of the Government Code and a Constitutional taking. The District filed a no-evidence motion for summary judgment, contending that there was no evidence of an intentional taking by the District.

## A. Standard of Review and Applicable Law

After adequate time for discovery, a party may move for a no-evidence summary judgment on the ground that no evidence exists to support one or more essential elements of a claim or defense on which the opposing party would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The trial court must grant the motion unless the nonmovant produces summary judgment evidence raising a genuine issue of material fact. *Id.* More than a scintilla of evidence exists if the evidence "would allow reasonable and fair-minded people to differ in their conclusions." *Forbes Inc. v. Granada Bioscis., Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). To defeat a no-evidence motion for summary judgment, the respondent is not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements. TEX. R. CIV. P. 166a(i) cmt.

The Private Real Property Rights Preservation Act ("PRPRPA") defines a government taking, as follows:

> (A) a governmental action that affects private real property, in whole or in part or temporarily or permanently, in a manner that requires the governmental entity to compensate the private real property owner as provided by the Fifth and Fourteenth Amendments to the United States Constitution or Section 17 or 19, Article I, Texas Constitution; or
>
> (B) a governmental action that:
>
>> (i) affects an owner's private real property that is the subject of the governmental action, in whole or in part or temporarily or

13

permanently, in a manner that restricts or limits the owner's right to the property that would otherwise exist in the absence of the governmental action; and

(ii) is the producing cause of a reduction of at least 25 percent in the market value of the affected private real property, determined by comparing the market value of the property as if the governmental action is not in effect and the market value of the property determined as if the governmental action is in effect.

TEX. GOV'T CODE ANN. § 2007.002(5) (West 2009). The PRPRPA waives immunity to suit and liability "to the extent of liability created by [the Act]." TEX. GOV'T CODE ANN. § 2007.004. Thus, the PRPRPA waives immunity for "governmental actions" alleged to have caused (1) a Constitutional taking, or (2) of a reduction of at least 25 percent in the market value of the affected private real property. *Id.* Here, appellants claim a Constitutional taking as the basis for their PRPRPA claim.

A governmental entity may be held liable for a nuisance that rises to the level of a Constitutional taking. *See Jennings*, 142 S.W.3d at 316; *see also City of Abilene v. Downs,* 367 S.W.2d 153, 159 (Tex. 1963) ("[I]f the construction and operation of the plant results in a nuisance, such acts of the municipality constitute a damaging or taking of property under Section 17 of Article I of the Texas Constitution."). The Fifth Amendment grants a landowner the right to seek compensation from the government for land that it takes: "[N]or shall private property be taken for public use, without just compensation." U.S. CONST. amend. V. Likewise, the Texas Constitution provides, "No person's property shall be taken, damaged, or destroyed

14

for or applied to public use without adequate compensation being made, unless by the consent of such person." TEX. CONST. art. I, § 17. Thus, while sovereign immunity protects the State from lawsuits for monetary damages, it "offers no shield against a taking claim brought under Article I, section 17 of the Texas Constitution." *John G. & Marie Stella Kenedy Mem'l Found. v. Mauro,* 921 S.W.2d 278, 282 (Tex. App.—Corpus Christi 1995, writ denied); *see also Gen. Servs. Comm'n v. Little-Tex Insulation Co.,* 39 S.W.3d 591, 598 (Tex. 2001) (sovereign immunity does not shield State from action for compensation under takings clause). Rather, "[t]he Constitution itself is . . . a waiver of governmental immunity for the taking, damaging or destruction of property for public use." *Steele v. City of Houston,* 603 S.W.2d 786, 791 (Tex. 1980).

If a governmental entity takes, damages, or destroys property for public use without process or proper condemnation proceedings, governmental immunity is waived, and an action for inverse condemnation will lie. *City of Dallas v. Blanton*, 200 S.W.3d 266, 271 (Tex. App.—Dallas 2006, no pet.). To establish the claim, the claimant must prove: (1) a governmental entity intentionally performed certain acts (2) that resulted in a taking or damaging of property (3) for public use. *Dallas, Garland & Ne. R.R. v. Hunt County*, 195 S.W.3d 818, 821 (Tex. App.—Dallas 2006, no pet.). A physical taking, as opposed to a regulatory taking, is an unwarranted physical appropriation or invasion of the property. *Blanton*, 200 S.W.3d at 271.

"When damage is merely the accidental result of the government's act, there is no public benefit and the property cannot be said to be taken or damaged for public use." *City of Dallas v. Jennings*, 142 S.W.3d 310, 313 (Tex. 2004) (internal quotations and emphasis omitted).

## B. No Evidence of Intentional Taking

In their No Evidence Motion for Summary Judgment, the District contended that the claims against it should be dismissed because plaintiffs presented no evidence that the District acted intentionally or that they property values had been diminished by the existence and operation of the Center. We agree.

Takings can be classified as physical or regulatory. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex. 1998). Physical takings occur when the government authorizes an unwarranted physical occupation of an individual's property. *Id.* Physical possession is, categorically, a taking for which compensation is constitutionally mandated. *Sheffield Dev't Co., Inc. v. City of Glenn Heights*, 140 S.W.3d 660, 669–70 (Tex. 2004). In contrast to a physical taking, a restriction on the permissible uses of property or a diminution in its value resulting from regulatory action within the government's police power may or may not be a compensable taking depending on the circumstances. *Id.* Here, appellants have pleaded a physical taking, not any governmentally imposed regulation or restriction, thus we review the

record to determine whether there is some evidence of an "unwarranted physical occupation" of their properties.

In their response to the District's Motion, appellants provided an expert report from Arthur Malone which stated that "[i]f a large overflow of contaminated stormwater were to overrun their well surface areas, a potential for contamination can occur." He then concluded that the location of the Center presented "potential groundwater contamination," and that "drinking wells in the immediate area [of] the Agricultural pond regularly contain coliform/E.coli bacteria amounts at greater than safe limits raising fears of groundwater contamination from the pond." However, Malone did not conclude that any groundwater contamination had actually occurred, or that if it had, it was caused by the presence of the Center.

Appellants also presented two groundwater tests to support their assertion that the groundwater on their properties had been contaminated by presence of the Center. First, Southwestern Laboratories, at the request of plaintiff Gilliam, performed a test for fecal coliform on two samples taken from ditches near the Center. The test results "indicate fecal coliform amounts well in excess of the above limits that [Gilliam] provided." However, there is no evidence that the ditches were located on the property of any of the plaintiffs.

Appellants also presented evidence that only two of them—Gilliam and Hollan—had their wells tested, and that both tests were positive for coliforms or

bacteria. However, there is no evidence indicating the source of bacteria found in the wells or linking it to the presence of the Center.

Thus, we conclude that appellants did not present a scintilla of evidence that the District committed an intentional, unwarranted physical appropriation or invasion of their properties. As such, they did not raise a fact question on the issue of a Constitutional taking.

We overrule appellants' issue three.

## IV.    Nuisance and Water Code Claims

In their fourth issue, appellant contend the trial court erred in dismissing their nuisance claims. Appellants explain that their nuisance claims are, in fact, part and parcel of their Constitutional takings claim, and they are alleging that the nuisance rose to the level of a Constitutional taking, an act for which immunity is waived. For the same reason that we affirmed the judgment on appellants' takings claims in issue three, we also overrule their nuisance claims.

Regarding their Water Code claims, this Court has acknowledged that the Water Code does not waive governmental immunity from suit. *See Church v. City of Alvin*, No. 01-13-00865-CV, 2015 WL 5769998, at *4 (Tex. App.—Houston [1st Dist.] Sept. 29, 2015, no pet.) (mem. op.) (citing *City of Midlothian v. Black*, 271

18

S.W.3d 791, 797–98 (Tex. App.—Waco 2008, no pet.) (holding that section 11.086

of Water Code does not waive immunity from suit).

We overrule appellants' issue four.

## CONCLUSION

We affirm the trial court's judgment.


                                   Sherry Radack
                                   Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.